## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  JAMIE EFTEMOFF, | ) | |
| | ) | |
| Plaintiff, | ) | CIV-13- |
| v. | ) | |
| | ) | |
| 1.  SIGMA PROCESSED MEATS, INC., A/K/A SIGMA PROCESSED MEATS, LLC D/B/A BAR S FOODS, AND | ) ) ) ) | |
| 2.  BAR S FOODS CO. A/K/A BAR S FOODS OF OKLAHOMA, | ) ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW THE PLAINTIFF**, Jamie Eftemoff, and for her Complaint against the Defendants herein alleges and states as follows:

### PARTIES

1. The Plaintiff is Jamie Eftemoff, an adult female who resides in Oklahoma County, Oklahoma.

2. The Defendants are Sigma Processed Meats, Inc., a/k/a Sigma Processed Meats, LLC, d/b/a Bar S Foods, an entity doing business in Jackson County, Oklahoma and Bar S Foods Co., a/k/a Bar S Foods of Oklahoma an entity doing business in Jackson County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff asserts causes of action based on: gender discrimination, sexual harassment, sexually hostile work environment, and retaliation which is prohibited by Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e, *et seq*; disability discrimination and retaliation in violation of the ADA and ADAAA; and worker's compensation retaliation.

4. Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the claims arose in Jackson County, and Defendants are located and/or doing business in such county and may be served in that county. Jackson County is located within the Western District of the United States District Court of Oklahoma, wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff timely filed a Charge of Discrimination with the EEOC on or about November 28, 2012. Her Charge was amended on or about May 24, 2013. The EEOC issued a Right to Sue letter dated June 5, 2013 which was received by Plaintiff by mail thereafter. As such, Plaintiff has exhausted her administrative remedies. This lawsuit is timely filed within ninety (90) days of Plaintiff's receipt of the Right to Sue letter.

## STATEMENT OF FACTS

7. Plaintiff began her employment with Defendants on or about November 28, 2011 in Sanitation.

8. In or around December 2011, Plaintiff began experiencing a sexually hostile work environment when she was sexually harassed by several male co-workers, including but not limited to Misael Rivera-Delgado and Lazaro Cuellar Duron. Particularly, Plaintiff was routinely subjected to unwelcome and offensive touching in a sexually offensive manner by her male co-workers and subjected to unwelcome and offensive vulgar sexual comments. Male employees grabbed her breasts and buttocks and touched her between her legs. She was also sprayed on her buttocks with water hoses. This sexually inappropriate behavior continued until Plaintiff's wrongful termination on or about September 7, 2012.

9. It is undisputed that Plaintiff reported the offensive and unwelcome conduct to her supervisors and Human Resources on numerous occasions, but little or no corrective action was taken. In fact, on at least one occasion, Manager Randy Hughes told Plaintiff that "boys will be boys" and Plaintiff "needed to grow a thicker skin." And, Defendants simply categorized the sexual harassment as "horseplay."

10. Plaintiff also made several requests to transfer to a different work area, but those were denied without justification.

11. After reporting the sexually hostile work environment, Plaintiff was issued an attendance warning by Hughes on or about February 4, 2012.


12. Within a few weeks, Plaintiff's co-worker Robert Connet asked Plaintiff on multiple occasions for sexual favors and stated that she made him sexually aroused. Plaintiff again reported the sexual harassment to Hughes, but he took no remedial measures.

13. On or about June 8, 2012, Plaintiff was injured at work. While cleaning on top of a machine, Plaintiff slid and her leg became caught, suspending her above the ground. Plaintiff suffered serious bruising to her lower body, which substantially limited her ability to perform one or more major life activities, including but not limited to walking, standing and sitting. She reported the on-the-job injury and was put on light duty until she received a full release on or about June 13, 2012.

14. On or about June 28, 2012, Plaintiff was further retaliated against when she was suspended for an incident that allegedly occurred on June 13, 2012. However, the alleged conduct was the same as conduct other employees engaged in without discipline.

15. On or about July 3, 2012, Plaintiff's co-worker Darren (last name unknown) witnessed Misael Rivera-Delgado grab Plaintiff's breast. Darren and Plaintiff told Hughes and filled out incident reports. Plaintiff again asked to transfer, and was told that if another position opened, she could transfer. However, she was not allowed to transfer.

16. Plaintiff then spoke with Sandra Cusher, Human Capital Manager, about transferring on or about July 5, 2012. Cusher told Plaintiff that she had no control over Hughes.

17. On or about July 7, 2012, Plaintiff called Defendants' corporate headquarters

in regard to switching positions due to the sexual harassment, but was told to speak with her local representatives.

18. Plaintiff asked to be transferred multiple times over the next several weeks, speaking with Hughes regarding the possibility of open positions on or about July 10, July 24, and July 31, 2012. However, the positions were filled with new hires, and Hughes told Plaintiff that she should no longer have any issues as Misael Rivera-Delgado allegedly promised not to touch her again. However, Plaintiff continued to suffer verbal and physical sexual harassment and a sexually hostile work environment.

19. Additionally, further retaliation was taken against Plaintiff. Hughes issued an attendance warning to Plaintiff on or about July 28, 2012. She was then issued a verbal counseling by Hughes on or about August 2, 2012. And, on or about September 6, 2012, Plaintiff was terminated.

20. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I- TITLE VII OF THE CIVIL RIGHTS ACT

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

21. The matters alleged above constitute violations of Title VII of the Civil Rights Act in the nature of gender discrimination, sexual harassment, sexually hostile work environment, and retaliation for Plaintiff's reports of the same.

22. As damages, Plaintiff has suffered lost earnings, past and future, and emotional distress.

23. Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT II - ADA and ADAAA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

24. The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

25. More specifically, Plaintiff's on-the-job injury in the nature of a physical impairment substantially limited her ability to perform one or more major life activities and impacted one or more of her internal bodily processes, including but not limited to walking, sitting, standing, and sleeping.

26. Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

27. As a result of Plaintiff's medical conditions, Plaintiff was a qualified individual with disabilities within the meaning of the ADA and ADAAA, in that, she was disabled, had a record of a disability, and/or was perceived as disabled.

28. As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

29. Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT III:  WORKERS' COMPENSATION RETALIATION

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

30. Defendants' actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act, 85 O.S. §§ 5-7.

31. Plaintiff sustained a job-related injury for which she could assert a claim for benefits under the Oklahoma Workers' Compensation Act.

32. Defendants had knowledge of Plaintiff's work-related injury.  Defendants terminated Plaintiff's employment shortly after she put them on notice of her injury.

33. As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

34. Defendants' actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

### PRAYER

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendants and assess actual, compensatory, and punitive damages, together with

pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 1st DAY OF AUGUST, 2013.**

s/ Jana B. Leonard
**JANA B. LEONARD, OBA #17844
SHANNON C. HAUPT, OBA #18922
LEONARD & ASSOCIATES, P.L.L.C
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800 [TELEPHONE]
(405) 239-9801 [FACSIMILE]
leonardjb@leonardlaw.net
haupts@leonardlaw.net**

**JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED**